FILED
CLERK
8/1/2019 5:33 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
ROBERT MORGAN,

                Plaintiff,         **MEMORANDUM OF
DECISION & ORDER**
      -against-             2:18-cv-02485 (ADS)(AKT)

NORTHSTAR LOCATION SERVICES, LLC,

                Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**The Law Office of Joseph Mauro, LLC**
*Attorneys for the Plaintiff*
306 McCall Avenue
West Islip, NY 11795
      By:    Joseph Mauro, Esq., Of Counsel.

**Hiscock & Barclay, LLP**
*Attorneys for the Defendant*
2000 Hsbc Plaza
100 Chestnut Street
Rochester, NY 14604
      By:    Paul A. Sanders, Esq., Of Counsel.

**SPATT, District Judge**:

      Plaintiff Robert Morgan (the "Plaintiff") initiated this this putative class action against defendant Northstar Location Services, LLC (the "Defendant") for damages stemming from alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C., 1692 *et seq.* ("FDCPA"). The Plaintiff contends that the Defendant sent a debt collection letter which falsely stated that the amount owed by the Plaintiff may increase due to interest, late charges, and other charges.

      Presently before the Court is a motion by the Defendant, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) to dismiss the complaint for failure to state a

1

claim upon which relief can be granted. For the following reasons, the Court grants the Defendant's motion in its entirety.

## I. BACKGROUND

The Plaintiff allegedly incurred a debt to Cross River Bank which was subsequently transferred to the Defendant for collection. The Loan Agreement between the Plaintiff and Cross River Bank states:

> **1. Loan Terms.**
>
> a. The principal Amount of Your Loan is: $7,000.00
>
> b. The Origination Fee is: $349.30
>
> c. The Amount Given to You Directly is: $6,650.70
>
> d. The Annual Loan Interest Rate is: 26.07%
>
> e. Your Payment Schedule is: 35 consecutive monthly payments of $282.30 and one final payment of the unpaid principal balance, all unpaid interest, and all unpaid fees and charges. The first payment will be one calendar month after the loan is funded. See paragraph 7. Payments, below, for more details.
>
> . . .
>
> **6. Interest.** You agree to pay interest on the unpaid principal balance of the Amount of Your Loan from the date the loan proceeds are disbursed until the loan is paid in full, at the fixed Annual Loan Interest Rate set forth in paragraph 1. Loan Terms, above. Interest is calculated on a daily basis, on the unpaid principal balance, at the interest rate, and for the number of days that balance was unpaid. This is a simple interest obligation, and interest is not charged on unpaid interest, except interest is charged on the unpaid origination fee. The Total of Payments and amount of the Finance Charge set forth in the Truth in Lending Disclosure Statement assume that each payment is made on its due date. Late payments will result in more interest; early payments will result in less interest.
>
> **12. Fees.**
>
> \* \* \*
>
> • <u>Returned Check or ACH Fee</u>. You agree to pay a fee of $15, if ACH transfers or checks are returned or fail due to insufficient funds in your account or for any other reason. Each attempt to collect a payment is considered a separate transaction, so an unsuccessful payment fee will be assessed for each failed attempt. The bank that

holds your designated account may assess its own fee in addition to the fee we assess.

• <u>Late Fee</u>. If your payment is not received by us within three days of the due date, we may charge a late fee in the amount of $15. We will charge only one late fee on each late payment. These fees may be collected using ACH transfers initiated by us from your designated account. Any such late fee assessed is immediately due and payable. Any payment received after 6:00 P.M., Eastern Time, on a banking day is deemed received on the next succeeding banking day.

• <u>Extension Fees</u>. You agree to pay a fee of $25 or such other amount as provided by law for the processing of your request for an extension of this Agreement.

ECF 21, Ex. B.

On April 27, 2017, the Plaintiff received a collection letter from the Defendant that sought to recover the debt, hereinafter referred to as the "Letter." The Letter stated that the total balance was $6,595.66 and that $0 in interest had accrued. The Letter included the following language:

> Northstar Location Services, LLC is offering to settle your account for $1,978.7. This special settlement offer is good until 5/19/2017.
>
> Please be advised that if this item does not clear through your bank, this settlement offer will be considered null and void. We are not obligated to renew this offer.
>
> This settlement may have tax consequences. If you are uncertain of the tax consequences, consult a tax advisor.
>
> As of the date of this letter, your overdue balance with interest now equals the sum of Balance. Because of interest, late charges and other charges that may vary day to day, the amount due on the day you pay may be greater. As a result, if you pay the amount shown above an adjustment may be necessary after we receive your payment. If that is the case, we will inform you before depositing the payment. For further information, you may call our office at 1-855-454-1087.

ECF 21, Ex. A.

On April 26, 2018, the Plaintiff filed the Complaint, alleging the Letter violated Sections 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, USC 1692f(1), and 1692g(a) of the FDCPA.

On November 7, 2018, the Plaintiff filed the Amended Complaint.

3

On December 7, 2018, the Defendant moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6).

## II. DISCUSSION

### A. THE LEGAL STANDARD.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F.Supp.2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has expounded that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule

4

8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F.Supp.3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

**B. THE FAIR DEBT COLLECTION PRACTICES ACT.**

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (noting that the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors"). Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576, 130 S. Ct. 1605, 176 L.Ed. 2d 519 (2010).

In order to successfully state a claim under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3)

5

the defendant has engaged in any act or omission in violation of FDCPA requirements." *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (internal citations omitted); *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (same).

Second Circuit courts evaluate FDCPA claims based upon how the "least sophisticated consumer" would understand the communication at issue. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). "FDCPA protection 'does not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the [least sophisticated consumer] standard 'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'" *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233–34 (2d Cir. 2012) (per curiam) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). Whether a portion of a debt collection letter is deceptive to the "least sophisticated consumer" is a question of law. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) ("We apply an objective test based on the understanding of the 'least sophisticated consumer' in determining whether a collection letter violates section 1692e." (citing *Clomon*, 988 F.2d at 1318). As a result, courts may dismiss FDCPA claims based solely on a debt collection letter from a debt collection agency to a consumer at the pleadings stage, if appropriate. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005).

**C. APPLICATION TO THE FACTS.**

The Plaintiff does not break down his theories of liability under each section of the FDCPA, instead summarily arguing the Letter violated 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, USC 1692f(1), and 1692g(a).

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §

6

1692e. There are sixteen subsections that enumerate a non-exhaustive list of banned practices, including:

> (2) The false representation of—
>
>> (A) the character, amount, or legal status of any debt; or
>>
>> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*Id.* A collection notice also violates Section 1692e "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996), *i.e.*, when it violates the "least sophisticated consumer" standard. *See Clomon*, 988 F.2d at 1318.

Section 1692g requires debt collectors to provide a "validation notice" to consumers in or within five days of the debt collector's initial communication with the consumer. The "validation notice" must include certain statutorily prescribed information, such as "the amount of the debt." 15 U.S.C. § 1692g(a)(1). Whereas Section 1692e "ensure[s] that a collection notice is not misleading," "Section 1692g concerns only the disclosures related to a consumer's need to verify a debt." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76 (2d Cir. 2016)

In addition, Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The prefatory clause is followed by a list of specific "examples of ... conduct" that constitute a violation of this section. *Schweizer v. Trans*

*Union Corp.*, 136 F.3d 233, 236 n. 2 (2d Cir.1998) (citing 15 U.S.C. §§ 1692f(1)–(8)). Relevant here, Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

"The list of § 1692f violations found in the subsections are nonexhaustive," *Tsenes v. Trans–Cont'l Credit & Collection Corp.,* 892 F.Supp. 461, 466 (E.D.N.Y.1995), and the prefatory clause in section 1692f "is a catchall provision that provides a cause of action 'standing alone,'" *Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 522, 529 (S.D.N.Y.2013) (quoting *Tsenes,* 892 F.Supp. at 465); *see also Rogers v. Capital One Servs., LLC*, 447 F. App'x 246, 249 (2d Cir. 2011) (noting that section 1692f's prefatory clause is "a catchall provision"). However, courts only consider debt collection actions to be "unfair or unconscionable" within the prefatory clause when they are "marked by injustice, partiality, or deception," "unscrupulous," "show[] no regard for conscience," or "affront[] the sense of justice, decency, or reasonableness." *Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 314 (E.D.N.Y. 2015).

The Plaintiff alleges that the language in the Letter indicating that the Defendant may impose "interest, late charges, and other charges" violates the aforementioned provisions of the FDCPA, because interest had not in fact been charged. As a result, the Plaintiff believes that the Letter would mislead the least sophisticated consumer as to whether interest is accruing, and otherwise represents an attempt to collect interest unauthorized by law or contract.

On the other hand, the Defendant argues that the Plaintiff's claims fail as a matter of law because the Second Circuit expressly approved using the language at issue in *Avila v. Riexinger & Associates, LLC*, 817 F.3d 72 (2d Cir. 2016) (hereinafter "*Avila I*"). In *Avila I*, the Second Circuit held that collection letters were misleading if they revealed the "current balance" but "did not

8

disclose that the balance might increase due to interest and fees." *Id.* at 74. In doing so, the Second Circuit fashioned a "safe harbor" formula, through which a debt collector could "discharge[] its duty as a matter of law to state clearly the amount due" by including in a collection notice. *Id.* at 77. In pertinent part, the safe harbor is as follows:

> As of the date of this letter, you owe $\_\_\_\_ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800–[phone number].

*Id.* (quoting *Miller v. McCalla, Rayner, Padrick, Cobb, Nichols, & Clerk, LLC*, 214 F.3d 872, 876 (7th Cir. 2000)). The portion of the Letter the Plaintiff takes issue with comes directly from the *Avila I* safe harbor. The Court agrees with the Defendant that it cannot be liable for including such language

The Court addressed a claim identical to the one here in *Avila v. Reliant Capital Solutions, LLC*, No. 18-cv-2718, 2018 WL 5982488 (E.D.N.Y. Nov. 14, 2018) (Spatt, J.) (hereinafter, "*Avila II*"). The same plaintiff who brought the claim in *Avila I* brought another lawsuit against a different defendant, who included the safe harbor language regarding "interest, late charges, and other charges" even though there were no accruing "late charges" or "other fees." *Id.* at *4. The Court dismissed the plaintiff's claims:

> [T]he language of the safe harbor and its applicable case law moots any need for the Court to determine the sufficiency of the Plaintiff's pleadings regarding "late fees" and "other fees." *Avila* did not require a debt collector to state whether each of these additional charges, "interest," "late charges," and "other fees," were individually increasing. The safe harbor correctly states that any of these additional charges may increase over time. In order for the safe harbor language to be accurate, it is only necessary for one of the three components to change. As interest was accumulating on *Avila's* debt, the Letter's accuracy does not need to specify which of those components fluctuate nor does it require all three to do so.

9

> Even if the Letter was technically false, it would not violate section 1692e unless it misleads a hypothetical "least sophisticated consumer." *Avila* forecloses this potential argument. The Second Circuit provided clear direction in *Avila*: "[u]sing the language set forth in *Miller* will qualify for safe-harbor treatment." *Avila*, 817 F.3d at 77. See, e.g., *Taubenfliegel v. EGS Fin. Care, Inc.*, No. 18-CV-1962-ARR-JO, 2018 WL 3079697, at *4 (E.D.N.Y. June 21, 2018). "To hold otherwise would upset the reliance interests of the many debt collectors who, taking the Second Circuit at its word, drafted collection letters based on that guidance." *Timoshenko v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 17-CV-4472, 2018 WL 1582220, at *4 (E.D.N.Y. Mar. 30, 2018). When viewed from the perspective of the hypothetical "least sophisticated consumer," the Letter does not contain any false, deceptive, or misleading representations.
>
> Accordingly, the language used shall receive safe harbor treatment. *Avila*, 817 F.3d at 77. The Court finds that the Letter does not violate either section 1692e or section 1692g(a)(1).

*Id.* at *4–5. On appeal, the Second Circuit affirmed the Court's ruling in a summary order:

> In *Avila v. Riexinger & Associates, LLC* (*Avila I*), we adopted safe-harbor language to "satisfy a debt collector's duty to state the amount of debt in cases where the amount varies from day to day." 817 F.3d 72, 77 (2d Cir. 2016). Reliant included that language in its letter to Avila. Avila now urges us to follow the Seventh Circuit's recent holding that such language will not offer safe harbor if it falsely suggests an outcome that cannot come to pass. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366–71 (7th Cir. 2018). At oral argument, however, counsel for Avila conceded that late charges could be imposed on Avila's debt were it reinstated from default and acceleration status. In that case, other charges such as collection charges would also be possible. See 34 C.F.R. § 682.202(f). This case is therefore unlike *Boucher*, where the defendant conceded that late charges and other charges were impossible. *Boucher*, 880 F.3d at 367. Because Reliant's letter was not inaccurate in stating that "late charges and other charges" were possible, we affirm the District Court's dismissal of Avila's complaint. See *Avila I*, 817 F.3d at 77.

*Avila v. Reliant Capital Sols., LLC*, No. 18-cv-3637, 2019 WL 2359386, at *1 (2d Cir. June 4, 2019).

In the Court's view, *Avila II* conclusively precludes finding the Defendant liable based on the facts alleged in the Complaint. The Plaintiff puts forward several supposedly distinct bases for finding the Letter actionable. However, the crux of each theory is that the Letter created a false impression that additional charges existed when in fact none existed. ECF 25 at 7 ("Telling a

10

consumer that the amount of their debt is going up every day, when it is not is deceptive; it could obviously affect how a consumer addresses the alleged situation."), 8–9 ("While the Defendant now admits that they were not collecting interest, the objective least sophisticated consumer reading the letter would not know this, and could easily be misled"), 10 ("The Plaintiff has alleged, and the Defendant admits, that it was not collecting any interest or additional charges on the account. Yet the Defendant's letter indicates that they may be collecting these additional monies."), *id.* ("The letter however, does not give any specific information about these mysterious charges, making it impossible for the consumer to determine whether these additional charges are properly assessed, or whether they should be challenged."), 12–13 ("The Defendant threatening to impose the vague and ominous 'other charges,' gives the false impression that there are additional fees to which the Plaintiff is actually responsible for on some sort of ongoing ("day to day") basis.").

*Avila II* makes clear that debt collectors may include the safe harbor language, even when they do not intend to collect interest, late fees, and/or other charges, as long as they possess the contractual right to collect those charges. Here, the explicit terms of the Loan Agreement provided the Defendant the authority to do so. ECF 21, Ex. B. §§ 1, 6, 12. Therefore, the Letter is similarly entitled to safe harbor treatment. Despite the voluminous nature of his opposition brief, the Plaintiff neither addresses the rulings in *Avila II* nor attempts to distinguish the facts. The Court sees no reason to revisit its earlier decision, especially in light of the Second Circuit's affirmance.

Therefore, the Court finds that the Amended Complaint fails to state a claim for violations of Sections 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, USC 1692f(1), and 1692g(a).

## III. CONCLUSION

For the foregoing reasons, the Court grants the Defendant's motion to dismiss the Amended Complaint in its entirety. The Court dismisses the Amended Complaint with prejudice. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED**:

Dated: Central Islip, New York

August 1, 2019

    /s/ Arthur D. Spatt

ARTHUR D. SPATT

United States District Judge